UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

M.P.B. (XXX-XX-4054)                    CIVIL ACTION NO. 12-cv-0088

VERSUS                                  JUDGE WALTER

MICHAEL J. ASTRUE                       MAGISTRATE JUDGE HORNSBY

### REPORT AND RECOMMENDATION

Plaintiff was born in 1953, has a 10th-grade education, and worked in the past as an inventory clerk. She contends that she became disabled in December 2003 based primarily on the effects of fibromyalgia and back pain. ALJ Scott M. Staller conducted a hearing and held that Plaintiff was not disabled. The Appeals Council denied a request for review, making the Commissioner's decision final. Plaintiff filed this civil action to seek judicial review. For the reasons that follow, it is recommended that the Commissioner's decision be reversed and the case be remanded.

**Summary of the ALJ's Decision**

The ALJ analyzed Plaintiff's claim under the five-step sequential analysis established in the regulations. It requires the ALJ to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the

claimant from doing any other substantial gainful activity. See Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007).

The ALJ found that Plaintiff had not worked since her alleged onset date (step one) and that she suffered from degenerative disc disease of the cervical spine, fibromyalgia, and chronic obstructive pulmonary disease (COPD), impairments that are severe (step two) within the meaning of the regulations, but not so severe as to meet a listed impairment (step three) that will require a finding of disabled without further analysis.

Before going from step three to step four, the ALJ assesses the claimant's residual functional capacity ("RFC") by determining the most the claimant can still do despite his or her limitations. 20 C.F.R. §§ 404.1520(a)(4) and 404.1545(a)(1). 20 C.F.R. §§ 404.1520(a)(4) and 404.1545(a)(1). The ALJ found that Plaintiff, through the date she was last insured on December 31, 2005, had the RFC to perform the full range of light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b) and 416.967(b). The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. Social Security Ruling 83-10.

A vocational expert ("VE") testified that Plaintiff's past work as an inventory clerk was medium, so she could not perform it with an RFC for only light work. The ALJ accepted that testimony and found for Plaintiff at step four. The ALJ then turned to step five, which asks whether the claimant is able to perform the demands of other jobs that exist in

significant numbers in the national economy. The VE identified the jobs of order filler and laboratory clerk, which are light, and the ALJ accepted that testimony. Accordingly, he found that Plaintiff was not disabled.

**Issues on Appeal**

Plaintiff raises two issues on appeal. She contends that (1) the ALJ did not follow the regulations as required when the opinion of a treating physician is discounted and (2) the ALJ did not properly evaluate Plaintiff's credibility regarding the extent of her limitations. Only the first issue needs to be addressed.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Treating Physician's Opinion**

Plaintiff's treating physician was Dr. Leigh Dillard. The physician wrote a short letter in January 2010 that Plaintiff "is unable to perform or seek gainful employment due to chronic medical problems that require multiple medications, and manifest as constant pain."

Dr. Dillard added that the condition had existed since April 2002, and the diagnoses were fibromyalgia, osteoarthritis, and post-cervical diskectomy pain syndrome. Tr. 341.

A few months later, in May 2010, Dr. Dillard completed an eight-page Multiple Impairment Questionnaire that included 29 questions, some of which were multi-parted, about Plaintiff's abilities to engage in work-related activities. Dr. Dillard wrote that she had first treated Plaintiff in 2002 and sees her approximately every six months. The diagnoses was the same as listed in the letter, plus COPD, leukemia (apparently in remission and not at issue here), sleep apnea, and hyperlipodemia (high cholesterol). She estimated Plaintiff's pain level to be in the moderate to moderately severe range, with her fatigue at the low end of the moderate level. She estimated that Plaintiff could, in a normal workday, sit for six hours and stand/walk for two hours (which is consistent with light work). She estimated Plaintiff's abilities to lift and carry weights that are consistent with light work.

Dr. Dillard also found, however, that Plaintiff had additional limitations that are inconsistent with the ability to perform the full range of light work. For example, she found a moderately limited ability to grasp, turn, or twist objects, as well as to use the arms for reaching. She opined that when Plaintiff is sitting, she will be required to get up and move around on an hourly basis, and do so for 15 to 30 minutes before sitting again. Dr. Dillard also found Plaintiff had a low capability to tolerate work stress, would need to take unscheduled breaks to rest one or two times each day, and would be absent from work as a result of her impairments about two to three times a month. Finally, Dr. Dillard stated that

Plaintiff could not engage in any pushing, pulling, kneeling, bending, or stooping. Tr. 394-401.

The ALJ wrote that he gave the statements from Dr. Dillard limited weight, but he afforded significant weight to the opinion of a state agency medical consultant who reviewed the medical records but never examined Plaintiff. Tr. 21-22. The ALJ assigned some reasons for his assessment, which will be discussed below. Plaintiff argues that the reasons are insufficient to meet the procedural requirements of the regulations and the Fifth Circuit's Newton decision, and she contends that several of the reasons given are wrong or misplaced.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. The treating physician's opinion on the nature and severity of a patient's impairment will be given "controlling weight" if it is well supported by medical evidence and not inconsistent with other substantial evidence. Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000), citing 20 C.F.R. § 404.1527.

The ALJ may, however, discount the weight of a treating physician's opinion when good cause is shown. Good cause exists when a treating physician's opinion is conclusory, unsupported by medically acceptable techniques, or is otherwise unsupported by the evidence. Newton, 209 F.3d at 455-56. The regulations provide that the Commissioner "will always give good reasons" for the weight given the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2).[1] The regulation specifically requires consideration of:

---

[1] This provision is located in 20 C.F.R. § 404.1527(c)(2) in the current version of the regulation.

(1) the physician's length of treatment of the claimant;

(2) the physician's frequency of examination;

(3) the nature and extent of the treatment relationship;

(4) the support of the physician's opinion afforded by the medical evidence of record;

(5) the consistency of the opinion with the record as a whole; and

(6) the specialization of the treating physician.

Even if the treating source's opinion is not well supported by medically acceptable evidence or is inconsistent with other substantial evidence in the record, that means only that the opinion is not entitled to controlling weight. It is still entitled to some deference and must be weighed using all of the factors in the above list. Newton, 209 F.3d at 456. And Newton made clear that "an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." Id. The Newton case was remanded to permit that analysis.[2]

The ALJ did not specifically address each of the factors in the regulation, but he did give reasons for his assignment of limited weight to Dr. Dillard's opinion. He listed them (Tr. 21-22) as follows:

---

[2] Later cases have clarified that the six-factor review is required only when there is an absence of competing first-hand medical evidence. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003); Nall v. Barnhart, 78 Fed. Appx. 996 (5th Cir. 2003). There is no competing first-hand medical evidence in this case. The competing opinion comes from a non-examining consultant, so the Newton review is applicable in this case.

- The issue of disability is reserved for the Commissioner;

- the doctor did not have the benefit of reviewing the other medical reports contained in the current record;

- there is no evidence that the doctor is familiar with the Agency's rules and regulations regarding disability;

- the doctor's opinion is without substantial support from the other evidence of record, which obviously renders it less persuasive;

- the opinion expressed by the doctor is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion; and

- the doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness.

The comments about the issue of disability being reserved to the Commissioner and the physician not being familiar with the regulations appear to invoke 20 C.F.R. § 404.1527(d)(1) [formerly (e)(1)], which provides the Agency is responsible for making the determination about whether the claimant meets the legal definition of disability. The regulation explains that a statement by a medical source that a claimant is "disabled" or "unable to work" does not mean that the Agency will determine the claimant is disabled. On the other hand, quite relevant are a physician's medical findings and opinions about a claimant's health problems and what particular limitations (standing, reaching, lifting, etc.) they impose. It is the ALJ's duty to then decide whether those limitations render the claimant disabled within the meaning of the law. MEF v. Commissioner, 2011 WL 650802 (W.D. La. 2011), adopted, 2011 WL 650795 (W.D. La. 2011).

The rule against considering the physician's opinion on the legal issue of disability is applicable to Dr. Dillard's January letter, but it is not applicable to the later questionnaire that contains much more than a conclusion that Plaintiff is disabled. The same regulation promises that the Agency will review all of the medical findings that support a medical source's statement that the claimant is disabled, and the questionnaire sets forth just such findings.

The other points made by the ALJ have some validity but, undermining them is the history of treatment by Dr. Dillard for Plaintiff's fibromyalgia, Dr. Dillard's statement in the report that among the bases for her conclusions are eight years as the claimant's physician, and her statement that clinical findings to support fibromyalgia include observation of widespread chronic pain and elevated sedimentation rates. The ALJ did not take into consideration Dr. Dillard's length of treatment, frequency of examination, extent of treatment relationship, or specialization of the physician - all factors required by the regulation - in weighing the opinion. The first three of those certainly have the potential to support Dr. Dillard's opinion.

The ALJ chose instead to rely on the opinion of Dr. Johnny Craig, a state agency consultant. The ALJ wrote that the "State agency case analysis is given significant weight in that it is consistent with the record as a whole and the RFC outlined in finding 5." Tr. 22. Perhaps the entire record of Dr. Craig's opinion did not make its way into the administrative record before this court, but that is all a court may look to in deciding this case. It shows that an employee with the state agency requested an opinion from Dr. Craig through the

Electronic Claims Analysis Tool (ECAT). The employee wrote a short history that a prior claim had been denied based on a finding of a light RFC. The employee said there was no new evidence to contradict that RFC, and he suggested a light RFC be found once again. Dr. Craig was asked to "complete and sign RFC for denial if agree." Tr. 333. Dr. Craig signed a document that checked a box to say the findings completed the medical portion of the disability determination. The only findings on the page were: "See ECAT." Tr. 334. A follow-up request a few days later added that Plaintiff's neck problem seemed stabilized as evidenced by an examination and that Plaintiff had a diagnosis for fibromyalgia. The request suggested that a light RFC was still appropriate. Dr. Craig again agreed, with the only findings in this record: "See ECAT." Tr. 335-336. One document indicates that Dr. Craig's specialty is physical, and the other says orthopedic, but Plaintiff contends that Craig is actually an oncologist. This cannot be established with certainty from the current record, but there is an oncologist by the same name who practices in Shreveport.

The undersigned has declined to recommend reversal in cases where the ALJ was not 100% in technical compliance with Section 1527 but there was substantial compliance, the unaddressed factors were neutral or readily apparent, and there was no substantial likelihood of a different result even if there had been technical compliance. In this case, however, at least four of the six factors were not specifically addressed, and the opinion that was favored by the ALJ appears to have been about as conclusory as one might get.

In <u>Newton</u>, the claimant's treating physician completed a form similar to that submitted by Dr. Dillard. It indicated abilities inconsistent with even sedentary work based

on diagnoses of lupus, anemia, and other problems. The ALJ discounted the treating physician's report in favor of the testimony from a non-examining medical expert who actually testified at the hearing and explained in a fair amount of detail why he believed the treating physician's report was incorrect. The ALJ gave the treating physician's opinion no weight, stating that it was not sufficiently substantiated by clinical or diagnostic evidence (and thus conclusory), not supported by work restrictions in the actual medical notes and contemporaneous treatment records, and because the opinion of total disability was inconsistent with the fact that the claimant was working part-time. Despite those reasons - similar to those given in this case - the Fifth Circuit reversed because the ALJ did not properly consider all of the regulatory factors before discounting the treating physician's opinion in favor of that of the non-examining consultant. The case for reversal is perhaps even stronger here, where the non-examining consultant did not testify in detail as in Newton, but rather submitted a one-page conclusory opinion of a light RFC.

The Commissioner argues that the ALJ did not need to even consider the Section 404.1527 factors because the ALJ did not decline to give "any weight" to Dr. Dillard's evaluation. The ALJ cites in support the passage from Newton, 209 F.3d at 456, where the court said the ALJ was required to consider each of the regulatory factors "before declining to give any weight to the opinions of the claimant's treating specialist." The court said that because that is what happened in that case.

The ALJ in Newton did not give any weight to a treating specialist's opinion, but that does not limit the court's holding to those precise circumstances. The court titled a section

Page 10 of 12

of its opinion Factors to Be Considered Before Declining to Give Treating Physicians' Opinions Controlling Weight, where it examined the regulation that says the Agency, if it does not give the treating source's opinion controlling weight, will apply the factors listed in the regulations in determining what weight to give the opinion. Social Security Ruling 96-2p, quoted in Newton, explains that even if the treating source's opinion is not given controlling weight, it is still entitled to deference and must be weighed "using all of the factors" in the regulations, and might be entitled to the "greatest weight" even if it does not meet the test for controlling weight. The undersigned is, therefore, persuaded that it is not only when the ALJ elects to give no weight to the opinion of the treating physician that Newton and the regulations require the six-factor analysis.

The same result may be reached even after the six-factor analysis is properly conducted, but there is at least a significant likelihood that the outcome would be different, so the error was not harmless. Reversal and remand are in order. The court need not address the second issue regarding the assessment of Plaintiff's credibility, but if the Agency takes care to do so on remand, it may save the Agency and the court time in connection with any further proceedings.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be reversed and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be remanded to the Commissioner for further proceedings consistent with the court's opinion.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 11th day of February, 2013.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE